UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| RICHARD THOMPSON, | Civil Action No. 13-6282 (FLW) |
| **Petitioner,** | |
| v. | OPINION |
| STEPHEN D'ILIO, | |
| **Respondent.** | |

**WOLFSON, United States District Judge:**

I.    INTRODUCTION

Petitioner Richard Thompson ("Petitioner" or "Thompson"), a federal prisoner, has submitted a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2241, alleging that the United States Parole Commission ("Parole Commission") violated his due process rights under the Fifth Amendment by failing to set a final parole date at his last parole hearing and for imposing a sex-offender special condition on any eventual parole.  Shortly after he filed his Petition, Petitioner asked the Court to "supplement" his original Petition.  In that Supplement to his original Petition, he seeks a new parole hearing because the Parole Commission allegedly withheld from Petitioner a letter submitted by the Bureau of Prisons ("BOP") opposing his release on parole.  The named respondent in this action is Stephen D'Ilio, the Administrator at the New Jersey State Prison where Petitioner was confined at the time he filed this Petition.

For the reasons as set forth below, the claims raised in Petitioner's original Petition will be denied.  Respondent has not responded to the allegations in Petitioner's supplement to the original Petition.  However, because it appears from the record that Petitioner was set to receive a new interim parole hearing in May 2015, his request for relief may be moot.  Furthermore, it

1

appears that Petitioner is no longer at New Jersey State Prison, and that he has not updated his

address pursuant to L. Civ. R. 10.1.  For these reasons, the Court, having dismissed Petitioner's

original Petition, will administratively terminate the action at this time, and issue an Order to

Show Cause requiring Petitioner to update his address and notify the Court within 30 days as to

whether the claim raised in his supplement is moot or whether still seeks relief on this claim.

## II.      FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The Court recounts only the facts necessary to the instant Opinion.  In 1974, Petitioner

was serving an eight-year term under the Youth Corrections Act for rape. (*See* Exhibit 1 to

Gervasoni Certification attached to Respondent's Answer; *see also Thompson v. Warren*, No.

CIV.A. 11-4813 JAP, 2012 WL 4889234, at *1 (D.N.J. Oct. 12, 2012) (explaining same).)[1]

While serving that sentence, Petitioner killed another inmate and was convicted for that murder,

by judgment of conviction entered on June 27, 1977 before the United States District Court for

the Central District of California.  Petitioner was sentenced to life in prison on the murder

conviction.  (*Id.*)  On June 4, 1980, Petitioner was released from his Youth Corrections Act

sentence to serve his consecutive life sentence.  (*Id.*)  While incarcerated on his life sentence,

Petitioner committed other offenses for which he was sentenced.  (*Id.*)  Most notably, on August

2, 1985, Petitioner was sentenced by the United States District Court for the Southern District of

Illinois to five years for attempted escape and a ten-year consecutive term for assaulting a federal

corrections officer.  (*Id.*)

The Parole Commission conducted an initial parole hearing for Thompson in 1992,

denied parole, and ordered that he continue to serve his sentence until his 15-year

---

[1] Unless otherwise noted, all exhibits referenced in this Opinion are exhibits to the Gervasoni
Certification, which is attached to Respondent's Answer.

reconsideration hearing in February 2007.[2]  *Id.*  He received statutory interim hearings in 1994, 1996, 1998, 2001, and 2003, after which the Commission ordered no change in the prior order that he serve until his fifteen-year reconsideration hearing. (*Id.*; *see also* Exhibits 5-9.)

The Commission conducted a de novo reconsideration hearing on September 20, 2006, and ordered that Thompson remain incarcerated until the expiration of his sentence.  (*Id.*; *see also* Exhibit 10.) The National Appeals Board affirmed the decision on January 19, 2007.  (*Id.*; *see also* Exhibit 12.)  Another statutory interim hearing was held in 2009, and the Commission ordered no change. (*Id.*; *see also* Exhibit 13.)  Thompson then received another statutory interim hearing in March 2011, which became the subject of the Court's decision denying habeas relief in *Thompson v. Warren*, 2012 WL 4889234 (D.N.J. Oct. 12, 2012).  *See Thompson*, 2012 WL 4889234, at *2.

In *Thompson*, the Court, rejected Thompson's challenge to the denial of parole at his March 2011 hearing, finding that there was no due process violation in the failure of the Commission to give Thompson a final release date because the Commission was not within its "winding up" period, and also that Thompson did not have a constitutional right to a representative at his parole hearing.  (*See id.* at *4-5).

On May 7, 2013, the Parole Commission conducted another statutory interim hearing for Thompson, which forms the basis for the current habeas petition. (*See* Exhibit 20.) At the hearing, the Commission noted Thompson's history of violence, including the murder of a fellow inmate, an escape attempt, and an incident in which he stabbed a correctional officer 17 times; it ordered no change in its prior order that Thompson serve until the expiration of his sentence.

---

[2] Before the Sentencing Reform Act and imposition of the Sentencing Guidelines, prisoners sentenced to life imprisonment under the "old law" were eligible for parole after serving 30 years of any sentence of 45 years or more.

(*Id.*)  The Commission further ordered that Thompson would be subject to a "Special Sex

Offender Aftercare Condition," which would have required him, upon his release, to participate

in an in-patient or out-patient mental health program as directed by his probation officer.  (*See*

Exhibit 21.)  The Commission further scheduled Petitioner's next statutory interim hearing for

May 2015.  (*Id.*)

Petitioner appealed that decision administratively, and filed the instant habeas Petition

prior to receiving a decision from the National Appeals Board.  Petitioner's original Petition,

dated October 6, 2013, was initially assigned to the Honorable Joel A. Pisano and was docketed

on October 22, 2013.  (ECF No. 1.)   At the time he filed his Petition, Petitioner was incarcerated

at New Jersey State Prison in Trenton, New Jersey.  In his Petition, Petitioner alleges that the

United States Parole Commission violated his due process rights (1) by failing to set a final

parole date for him, and (2) by attaching a sex-offender special condition to any eventual parole

he might receive.  (ECF No. 1, Pet. at 2.)  He seeks a new hearing from the Parole Commission

and the removal of the sex-offender special condition.  (*Id.*, Pet. at 7.)  On November 8, 2013,

the National Appeal Board issued its decision and ordered that the Special Sex Offender

Condition be withdrawn, but otherwise affirmed the May 2013 Parole Commission decision.

(*See* Exhibit 22.)

On December 22, 2013, Petitioner signed and submitted for filing a document titled

"Supplement to Petitioner's Writ of Habeas Corpus Under 28 U.S.C. § 2241."  In that

submission, which was docketed on December 30, 2013, Petitioner asks the Court to permit him

to supplement his Petition filed on October 22, 2013, and alleges that his due process rights were

violated when the Parole Commission contacted the Bureau of Prisons ("BOP") about the

feasibility of granting Petitioner parole without making Petitioner aware of the BOP's opposition to Petitioner's parole, and by subsequently denying his parole. (ECF No. 2, Supp. Pet. at 1-2.)

On January 30, 2014, the Court ordered Respondent to answer the Petition. The Court did not rule on Petitioner's request to supplement his Petition, and the Order to Answer does not reference the Supplement to his Petition. (*See* ECF No. 3.) On March 3, 2014, Respondent filed its Answer to the Petition, along with the accompanying exhibits.[3] (ECF No. 4.) The Answer does not address the claim raised in the supplement.

On March 6, 2014, Petitioner submitted his traverse. In his Traverse, Petitioner attempts to distinguish his current challenge to the setting of a parole date from his challenge rejected by the Court in 2012. (ECF No. 6, Traverse at 2.) Petitioner acknowledges that the second ground for relief related to the sex-offender special condition has been mooted by the decision of the National Appeals Board, which removed that restriction. (*Id.* at 3-4.) Petitioner notes that Respondent did not respond to his supplement, and requests that the Court view this failure to respond as "an admission of guilt" and grant habeas relief on this basis.

On March 10, 2015, the matter was transferred to the undersigned. (ECF No. 8.) A recent search of the federal and New Jersey inmate locators indicates that Petitioner is no longer at NJSP and may have been moved to a Federal Resident Re-Entry Facility. (*See* https://www.bop.gov/inmateloc/, last visited on Oct. 26, 2016; *see also* https://www20.state.nj.us/DOC_Inmate/inmatesearch, last visited on Oct. 26, 2016.)

---

[3] The Court addresses the content of the Answer in the Analysis section of the Opinion.

### III.    ANALYSIS

#### a.  Claims Raised in Petitioner's Original Habeas Petition

Plaintiff's original Petition raises two claims for relief, alleging that the United States

Parole Commission violated his due process rights (1) by failing to set a final parole date for

him, and (2) by attaching a sex-offender special condition to any eventual parole he might

receive.  (ECF No. 1, Pet. at 2.)  Petitioner, however, has conceded in his Traverse that his

second claim related to the sex-offender condition has been mooted by the subsequent decision

of the National Appeals Board, which removed that restriction.  (ECF No. 6, Traverse at 3-4;

Exhibit 22.) The Court agrees and therefore addresses only his first claim related to the Parole

Commission's alleged failure to set a final parole date.

The Sentencing Reform Act of 1984, at § 218(a)(5), 98 Stat. 2027, abolished the Parole

Commission.  However, Section 235(b)(1)(A), 98 Stat. 2032, kept the Parole Commission in

existence for five years after the effective date of the Act (November 1, 1987), until October 31,

1992, to process the cases of prisoners convicted of crimes committed before the effective date

of the Act, who would still be incarcerated after that date.  *See Romano v. Luther*, 816 F.2d 832

(2d Cir. 1987); *Lightsey v. Kastner*, 846 F.2d 329 (5th Cir. 1988).  This five-year extension has

subsequently been extended by Congress to ten, then fifteen, then eighteen, then twenty- one,

then twenty-four, then twenty-six, and most recently to thirty-one years.[4]

---

[4] Section 315 of the Judicial Improvements Act of 1990 extended the Parole Commission for five additional years, until October 31, 1997. Pub. L. 101-650, 104 Stat. 5115. Section 2(a) of the Parole Commission Phaseout Act of 1996 extended the existence of the Commission for an additional five years to November 1, 2002. Pub. L.104-232, 110 Stat. 3055, Sec. 2(a) (Oct. 2, 1996). On November 2, 2002, Congress extended the existence of the Parole Commission for three more years, until October 31, 2005, by the 21st Century Department of Justice Appropriations Act. 21st Century Department of Justice Appropriations Act, Pub. L. 107- 273, 116 Stat. 1758, Sec. 11017 (Nov. 2, 2002). On September 29, 2005, Congress extended the Commission for three additional years, until October 31, 2008, by the United States Parole Commission Extension and Sentencing

In the Petition, Thompson claims that the Parole Commission violated § 235(b)(3) of the

Sentencing Reform Act, which is commonly referred to as the "winding up" provision. As

originally enacted, this section required the Parole Commission to set release dates within the

applicable parole guideline range for inmates still incarcerated after the 5-year winding-down

period.  However, Section 235(b)(3) was amended in 1987 by Section 2(b)(2) of the Sentencing

Act of 1987, and no longer requires the Commission to make decisions within the guidelines for

those still incarcerated after the abolition of the Commission.  Section 235(b)(3), as amended by

subsequent amendments, reads as follows:

> The United States Parole Commission shall set a release date, for
> an individual who will be in its jurisdiction on the day before the
> expiration of five years after the effective date of this Act, pursuant
> to section 4206 of title 18, United States Code. A release set
> pursuant to this paragraph shall be set early enough to permit
> consideration of an appeal of the release date, in accordance with
> Parole Commission procedures, before the expiration of five years
> following the effective date of this Act.

Section 235(b)(3) of the Sentencing Reform Act of 1984 (Title II of Comprehensive Crime

Control Act of 1984, Pub. L. 98-473, 98 Stat. 1987, as amended).

The pertinent language in Section 235(b)(3) has been construed by the Third Circuit in

*Furnari v. U.S. Parole Comm'n*, 531 F.3d 241, 248 (3d Cir. 2008):

> When Congress enacted section 235(b)(3) the Parole Commission
> was scheduled to expire five years after the effective date of the

---

Commission Authority Act of 2005, Pub. L. 109-76, 119 Stat. 2035, Sec. 2 (September 29, 2005).
On August 12, 2008, Congress extended the Commission for three additional years, until October
31, 2011, by the United States Parole Commission Extension Act of 2008. Pub. L. 110- 312, 122
Stat. 3013 (Aug. 12, 2008).   On October 21, 2011, Congress extended the Commission for two
additional years, until October 31, 2013, by the United States Parole Commission Extension Act
of 2011.  Pub. L. 112-44, 125 Stat. 532 (October 21, 2011). And on October 30, 2013, Congress
extended the Commission for five additional years, until October 31, 2018, by the United States
Parole Commission Extension Act of 2013. Pub. L. 113-47 (October 30, 2013).

> Sentencing Reform Act and thus it is clear that Congress
> contemplated that the Parole Commission should not expire
> without setting release dates for prisoners within its jurisdiction.
> Though the phrase "early enough to permit consideration of an
> appeal of the release date" obviously is not precise, it is applied to
> require that between three to six months before the date of its
> expiration, a date that has been extended several times, the Parole
> Commission must set a release date which, of course, could be
> scheduled for long in the future. *See* 28 C.F.R. § 2.64(b) (1996)
> ("The release dates required by section 235(b)(3) need not be set
> any earlier than the time required to allow an administrative appeal
> within the ten-year period, i.e., three to six months before the end
> of that period."); *Lightsey v. Kastner*, 846 F.2d 329, 332 (5th
> Cir.1988).

*Id.*  In *Furnari*, the Parole Commission denied Furnari parole on July 8, 2005, and did not set a

release date in the three-to-six-month period before October 31, 2005, when, prior to its latest

extension, the Commission was scheduled to expire.  As explained by the Third Circuit,

"[t]hough the Parole Commission's failure to set a release date <u>might have been</u> problematical,

Congress eliminated, or at least postponed, the problem when on September 29, 2005, it

extended the life of the Parole Commission to October 31, 2008, when it now will expire unless,

as the Government contemplates will happen, Congress extends its life."  *Furnari*, 531 F.3d at

249 (emphasis added); *see also Hackley v. Bledsoe*, 350 F. App'x 599, 601 (3d Cir. 2009) ("The

Parole Commission has never had to apply § 235(b)(3), because the commencement of the

winding up process has been continuously postponed by Congress").  Thus, under *Furnari*, it

appears that the Parole Commission's failure to set a final release date in compliance with the

statute is actionable only if Congress also fails to act to extend the life of the Parole

Commission.[5]

---

[5] As explained by Respondent, other courts have consistently interpreted § 235(b)(3) as a
"winding up" provision, only requiring action by the Parole Commission when it is actually
sunsetting.  *See Romano v. Luther*, 816 F.2d at 832; *Lightsey v. Kastner*, 846 F.2d at 329; *Stange
v. U.S. Parole Comm'n*, 875 F.2d 760 (9th Cir. 1989) (Parole Commission not required to set

Here, the Court finds that because Congress acted on October 30, 2013, to extend the existence of the Parole Commission until October 31, 2018, the Commission is not in its final "winding up" period, and any failure to set final release date for Thompson is not actionable. The facts here are indistinguishable from *Furnari*, described above, and the 2012 *Thompson* decision, in which the Court found that although the Parole Commission had not set a release date within the three-to-six months before its then-scheduled expiration in October 2011, the "failure" to do so was not actionable because Congress had extended the life of the Parole Commission. Here, just as in Thompson's previous case, the Parole Commission did not set a release date in the three-to-six months prior to its then-scheduled expiration on October 31, 2013, but, on October 30, 2013, Congress acted to extend the life of the Parole Commission through October 2018. Further, Thompson had been scheduled for a statutory interim hearing in May 2015. (*See* Exhibit 21.) Accordingly, Thompson has no claim premised on the alleged "failure" to set a release date at this time, and the Court will deny this claim for relief. *See Thompson*, 2012 WL 4889234, at *4-5.

### b.  Plaintiff's Supplement to his Original Petition

In December 2013, several months after he submitted his original Petition, Petitioner submitted a request to "supplement" the original Petition. In that Supplement, he seeks a new parole hearing because the Parole Commission allegedly withheld from Petitioner a letter submitted by the Bureau of Prisons ("BOP") opposing his release on parole. Respondent's Answer did not address the claim raised in Petitioner's supplement.

---

final release dates for prisoners under its jurisdiction until just prior to its abolition (then set for November 1, 1992)); *Kele v. Carlson*, 854 F.2d 338, 340 (9th Cir. 1988).

It appears from the record, however, that Petitioner was scheduled to receive a new interim parole hearing in May 2015.  Because Petitioner seeks only a new parole hearing, his request to supplement his Petition may be moot if he in fact received a new hearing.  Generally, a case becomes moot when the issues presented no longer present a live controversy or the parties lack a cognizable interest in the outcome. *See County of Morris v. Nationalist Movement*, 273 F.3d 527, 533 (3d Cir.2001); *Spencer v. Kemna*, 523 U.S. 1 (1998); *Powell v. McCormack*, 395 U.S. 486 (1969); *Prysock v. U.S. Parole Comm'n*, No. CIV.08-5116 (JBS), 2010 WL 1838415, at *3 (D.N.J. May 6, 2010).  In the context of habeas challenges to parole refusals, a subsequent parole hearing generally moots claims where the proper relief is a new parole hearing.  *See, e.g., Rollins v. Kerestes*, No. 13-7473, 2015 WL 418154 (E.D. Pa. Jan. 30, 2015) (habeas challenge to prior parole refusals became moot after new parole decision was issued, only most recent parole denial reviewed).  Notably, a search of the federal and New Jersey inmate locators indicates that Petitioner is no longer at NJSP and may have been moved to a Federal Resident Re-Entry Facility.  (*See* https://www.bop.gov/inmateloc/, last visited on Oct. 26, 2016; *see also* https://www20.state.nj.us/DOC_Inmate/inmatesearch, last visited on Oct. 26, 2016.)  Thus, it appears that Plaintiff has not complied with his obligation under L. Civ. R. 10.1 to notify the Court of his new address, and it is not clear whether the claim raised in the supplement is moot or whether Petitioner still seeks relief with respect to this claim.

For these reasons, the Court, having now dismissed the claims in the original Petition, will administratively terminate the action at this time, and issue an Order to Show Cause requiring Petitioner to update his address and notify the Court within 30 days as to whether the claim raised in his supplement is moot or whether he still seeks relief on this claim.

## IV.    CONCLUSION

For the reasons stated in this Opinion, Petitioner's original Petition is denied.  Having dismissed the claims in the original Petition, the Court will administratively terminate the action at this time, and issue an Order to Show Cause requiring Petitioner to update his address and notify the Court within 30 days as to whether the claim raised in his supplement is moot or whether he still seeks relief on this claim.  An appropriate Order follows.

/s/ Freda L. Wolfson
Freda L. Wolfson, U.S.D.J.

Date: October 27, 2016